UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CINDY RAYLENE FOLNSBEE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 3:14-cv-00009 ) ) JUDGE WISEMAN |
| NANCY BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Plaintiff Cindy Raylene Folnsbee's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 19), filed with a Memorandum in Support (Doc. No. 19-1). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion (Doc. No. 20.), to which Plaintiff replied (Doc. No. 25.) On January 12, 2017, this case was referred to Magistrate Judge Frensley. (Doc. No. 27.) The Court hereby withdraws that referral. In addition, upon consideration of the parties' filings and the transcript of the administrative record (Doc. No. 15),[2] and for the reasons stated herein, Plaintiff's Motion (Doc. No. 19) will be hereby **DENIED**.

### I. Introduction

Folnsbee filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act on February 22, 2010, alleging a disability onset of December 15, 2005, which was later amended to December 30, 2009. (Tr. 36.) Folnsbee's claim was denied at the

---

[1] Nancy Berryhill became Acting Commissioner for the Social Security Administration on January 23, 2017.
[2] Referenced hereinafter by page number(s) following the abbreviation "Tr."

1

initial and reconsideration stages of state agency review. Folnsbee subsequently requested *de novo* review of his case by an Administrative Law Judge ("ALJ"). The ALJ heard the case on August 20, 2012, when Folnsbee appeared with counsel and gave testimony. (Tr. 48–70.) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the matter was taken under advisement until August 24, 2012, when the ALJ issued a written decision finding Folnsbee not disabled. (Tr. 36–43.) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 30, 2009 through her date last insured of December 31, 2010 (20 C.F.R. 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: ischemic heart disease and obesity (20 C.F.R. 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, ... through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours out of 8 hours; sit 6 hours out of 8 hours; frequently climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladder/ropes/scaffolds; and avoid concentrated exposure to temperature extremes, vibration, and respiratory irritants.

6. Through the date last insured, the claimant was capable of performing past relevant work as a bowling alley manager. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7. The claimant was not under a "disability" as defined in the Social Security Act at any time from December 30, 2009, the alleged onset date, through December 31, 2010, the date last insured (20 C.F.R. 404.1520(f)).

(Tr. 38–39, 42.)

On October 31, 2013, the Appeals Council denied Folnsbee's request for review of the ALJ's decision (Tr. 1), thereby rendering that decision the final decision of the SSA. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of the Record

The following summary of the medical record is taken from the ALJ's decision:

> The claimant has a history of hypertension, hyperlipidemia, and coronary artery disease. She was admitted to the hospital on December 30, 2009, with unstable angina. Nuclear perfusion study showed fixed inferior wall defect and no ischemia with left ventricular ejection fraction of 36 percent. Echocardiogram showed normal chamber sizes and inferior infarct. Cardiac catheterization revealed 30 to 40 percent mid-lower anterior descending. She underwent percutaneous coronary intervention (PCI) with two over-lapping bare-metal stents placed in the right coronary artery. Left ventricular ejection fraction improved to 55 percent. She was discharged home on January 1, 2010 with prescriptions for Simvastatin, aspirin, Clopidogrel, Lisinopril, Metoprolol, and Nitroglycerin. Smoking cessation was strongly encouraged. Exhibit 2F.
>
> On February 2, 2020, she reported feeling better with no chest pain, dyspnea, orthopnea, paroxysmal nocturnal dyspnea (PND), palpitations, edema, lightheadedness, or syncope. She denied generalized fatigue and malaise. She stated she continued to smoke one pack of cigarettes per day. Examination showed no obvious joint deformities and no apparent focal motor or sensory deficits. Lisinopril dosage was increased. Exhibits 2F and 9F.
>
> On August 3, 2010, the claimant complained of daily heart palpitations over the last week. She stated these tended to be stress-related and lasted from one minute to less than one hour. A Holter monitor study was ordered. Simvastatin and Lisinopril dosage was increased. Smoking cessation was again encouraged. On October 5, 2010, the claimant reported her palpitations had improved and her Holter monitor showed rare VPCs and APCs. She had dyspnea when walking up stairs but no chest pain, orthopnea, paroxysmal nocturnal dyspnea (PND), lower extremity edema, lightheadedness, or syncope. She stated she had been out of Lisinopril for about two weeks. Her blood pressure was

uncontrolled and Lisinopril was restarted. She was instructed to keep a blood pressure log and quit smoking. Her blood pressure was noted to be under better control on December 7, 2010. She stated she had been feeling relatively well and her blood pressure log showed gradual improvement. She stated she cut back on smoking; however, smoking cessation was strongly encouraged. She reported some dyspnea when she really exerted herself but reported no chest pain. Medications were renewed. Exhibit 9F.

Albert Gomez, M.D., performed a consultative physical examination for the Social Security Administration on July 28, 2010. The claimant complained of chronic chest pain following a myocardial infarction in January 2010. Her chest pain was substernal, pressure type, without radiation, occurring about once a day and lasting for about 15 minutes. Her symptoms were increased with exertion and were decreased with rest. She denied nausea or vomiting associated with her chest pain. She reported smoking one pack of cigarettes per day with a 35-year history of smoking. She had a normal gait and was able to get on and off the examination table without difficulty. Blood pressure was 210/120. She was 63 inches tall and 187 pounds. Heart rate was regularly without any murmurs or rubs. There was moderate tenderness to palpation of the cervical spine with normal flexion, extension to 50 degrees, right and left lateral flexion to 35 degrees, and right and left rotation to 70 degrees. Extremities showed no cyanosis of clonus. There was 1+ pedal edema bilaterally. The pedal pulses were normal. There was a full range of motion in her shoulders, elbows, and wrists. Fine finger movements, fist making, and pinch grip were normal. Handgrip was good bilaterally. Her hips had full range of motion except for flexion to 110 degrees. Her left hip had moderate tenderness to palpation. There was full range o motion in her knees and ankles with moderate tenderness to palpation in her left knee. Motor strength was 4/5 in her upper and lower extremities. Deep tendon reflexes were 2+ bilaterally in her upper and lower extremities. There was mild tenderness to palpation of her lumbar spine with full range of motion. Straight leg raising test was negative in the lying and sitting position. She did the tandem walk, heel walk, and toe walk normally. She could not squat. She stood one foot normally. Babinski sign was absent and Romberg was negative. Exhibit 6F.

(Tr. 39–40.)

### III. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

## B. The Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five,

"the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–16; see Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

## C. Plaintiff's Statement of Errors

### 1. *Mental Impairments*

First, Folnsbee argues that the ALJ improperly failed to consider or evaluate her mental impairments and resulting functional limitations as well as Dr. Katheryn Steele's July 2010 consultative psychological examination report, and thus erred in failing to find Folnsbee's mental impairments to be severe. (Doc. No. 19-1, p. 7.) The Government responds that the ALJ's omission was not an error since there was insufficient evidence to trigger the ALJ's duty to discuss this impairment. (Doc. No. 20, pp. 4–5.) The Court agrees with the Government.

"By regulation, the ALJ is required to consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources." Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 434 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1512(b), 404.1513). Here, the ALJ noted in her opinion that Folnsbee "plays Nintendo Wii for a couple of hours at a time" (Tr. 41), and in Dr. S. Katheryn Steele's Consultative Examination ("CE"), she states that Folnsbee "plays Nintendo Wii 'for a couple of hours'" (Tr. 242). This connection, while slim, verifies that the ALJ considered the CE. Importantly, even if the ALJ did err in failing to discuss Folnsbee's mental impairments, such error is harmless because any such impairments were *de minimis*.

Folnsbee herself denies any mental health concerns multiple times (e.g., Tr. 218, 242–44, 262, 279, 281), has not sought any treatment, and was in fact "uncertain as to why she had been referred for a Mental Status Evaluation" (Tr. 242). The evidence on the record of mental impairments are Dr. Steele's diagnosis of adjustment disorder with depressed mood (Tr. 244), the Psychiatric Review Technique form which gave the same diagnosis but only included a single, mild functional limitation (Tr. 250, 260), and treatment notes from Vanderbilt University

Medical Center's Division of Cardiovascular Medicine which simply state "Psychosocial: Has anxiety, depression, no recent changes in mental status" (Tr. 274, 277). Despite Folnsbee's strenuous arguments otherwise, a diagnosis of adjustment disorder with depressive mood alone, particularly when combined with her own statements and failure to seek treatment, is insufficient to establish more than a *de minimis* impairment. See Foster v. Bowen, 853 F.2d 483, 488–89 (6th Cir. 1988) (holding that a diagnosis of dysthymic disorder could not establish the existence of a disability absent proof of the severity of the impairment); Moon v. Sullivan, 923 F.2d 1175, 1182–83 (6th Cir. 1990) (noting that a diagnosis of mental impairment must be supported by clinical signs, laboratory findings, or test findings and that claimant's allegation of a disabling mental impairment was inconsistent with his failure to seek treatment or take medication with his successful completion of a law school education and admission to the bar after his date last insured); Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 441 (6th Cir. 2010) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."). Therefore, the Court finds that the ALJ's decision is supported by substantial evidence in this regard.

*2. Credibility*

Folnsbee's second argument is that the ALJ improperly evaluated the credibility of her allegations. (Doc. No. 19-1, p. 10.) Although an ALJ may consider subjective complaints as evidence in support of a disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 475–76 (6th Cir. 2003)). In assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to

9

produce the symptoms alleged." Calvin v. Comm'r of Soc. Sec., 437 F. App'x 370, 371 (6th Cir. 2001). The ALJ made such a finding here. Next, the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as:

(i) [A claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

(iii) Precipitating or aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or [has] taken to alleviate [his or her] pain or other symptoms;

(v) Treatment, other than medication, [a claimant] receive[s] or [has] received for relief of [a claimant's] pain or other symptoms;

(vi) Any measures [a claimant] use[s] or [has] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [one's] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.; and

(vii) Other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ's credibility determinations are accorded great weight and deference, and courts "are limited to evaluating whether ... the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence on the record." Jones, 336 F.3d at 476.

The Court finds that the ALJ's credibility determination was supported by substantial evidence. The ALJ's first ground for discrediting Folnsbee is that "[t]he medical records do not support the level of limitations the claimant alleges." (Tr. 41.) Folnsbee argues that this is too vague, however, the ALJ's summary of Folnsbee's sufficiently addresses some of the inconsistencies in her alleged limitations. The ALJ discussed how Folnsbee underwent heart

surgery in December 2009 but by February 2010 she reported feeling better. (Tr. 39–40.) Dr. Albert Gomez performed the consultative examination in July 2010 and he concluded that she had a normal gait, was able to get on and off the table without difficulty, her heart rate was regular, she had full range of motion in her shoulder, elbows, wrists, hips (with moderate tenderness), knees (with some tenderness in her left knee), ankles, and spine (with mild tenderness), straight leg raising test was negative, and she did the tandem walk, heel walk, and toe walk normally. (Tr. 40.) In August 2010, she complained of daily heart palpitations over the course of a week so her doctor ordered a heart monitor study and increased the dosage of some of her medications. (Tr. 40.) By October, her palpitations had improved and her heart rate monitor showed rare VPCs and ACPs; however, she had run out of her blood pressure medication and her blood pressure was uncontrolled. (Tr. 40.) Her medication was resumed and on December 7, 2010, her blood pressure was under better control and she reported feeling relatively well. (Tr. 40.)

The ALJ also properly based the credibility evaluation on Folnsbee's daily activities, stating that she "ambulates independently, cares for her personal needs, cares for her grandchildren and helps them with homework, watches television, plays Nintendo Wii for a couple of hours at a time, does laundry, cleans, washes dishes, and prepares meals." (Tr. 41.) Folnsbee argues that this is an insufficient basis for discrediting her allegations because she requires frequent breaks, assistance, and performs many of the activities while seated. (Doc. No. 25, pp. 3–4.) However, the ALJ properly considered Folnsbee's daily activities as one of several factors in determining her credibility. See Temples v. Comm'r of Soc. Sec., 515 F. App'x 460, 462 (6th Cir. 2013). Although Folnsbee's level of daily activity was not extensive, it did contradict her claims of disabling pain and other symptoms.

The ALJ also noted that Folnsbee was told by doctors on several occasions that it would be beneficial to her overall health if she, among other things, stopped smoking. (Tr. 41.) Folnsbee argues that she cut back on her smoking, yet the record shows that she continually smoked a pack of cigarettes a day (e.g., Tr. 52, 217, 226, 247, 274, 276, 279, 281), despite numerous doctors repeatedly emphasizing the importance of cessation (e.g., Tr. 219, 220, 233, 234, 275, 278, 280, 282, 304, 307.) Folnsbee's refusal to stop smoking is a legitimate factor for the ALJ to consider in determining her credibility. See, e.g., 20 C.F.R. §§ 404.1529(c), 416.929(c)(3); Marshall v. Comm'r of Soc. Sec., 2015 WL 777940, at *5 (E.D. Mich. Feb. 24, 2015) ("[U]nder Sixth Circuit precedent, the ALJ was permitted to consider Plaintiff's continued smoking habit in evaluating credibility."). Finally, the ALJ found that the evidence demonstrated Folnsbee received good results from medications when taken as prescribed on a consistent basis. As noted above, the record supports this finding.

While Folnsbee cites some evidence that would tend to support her claim that she is more limited than the ALJ found, the Court finds that the ALJ's adverse credibility determination was supported by substantial evidence.

### 3. Sentence Six Remand

Folnsbee's final argument is that the Court should remand the case to the ALJ to consider new evidence. (Doc. No. 19-1, pp. 13–16.) The new evidence consists of medical records from Sumner Regional Medical Center, dated August 23–24, 2012 (Tr. 7–19), and Vanderbilt University Medical Center, dated August 24–25, 2012 (Tr. 20–29).

Pursuant to the sixth sentence of 42 U.S.C. § 405(g), additional evidence may warrant remand where a plaintiff demonstrates that the evidence is "new evidence which is material and that there is good cause" for not presenting it in the prior proceeding. Evidence is only new if it

was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a difference disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (1984) (per curiam).

Even assuming the additional records submitted by Folnsbee are new and that she can establish good cause, she fails to demonstrate the requisite materiality. The additional medical records are not probative of the disability period at issue because they are dated almost two years after Folnsbee's last date insured, December 31, 2010. See Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir. 1987) (holding that where a claimant suffers from a degenerative condition, evidence of the claimant's condition after the expiration of his insured status is only minimally probative of his condition prior to the expiration of his insured status); Keil v. Comm'r of Soc. Sec., No. 10-CV-13973, 2011 WL 4407149, at *11 (Aug. 30, 2011) *report and recommendation adopted by* 2011 WL 4406337 (E.D. Mich. Sept. 22, 2011) (quoting Nagle v. Comm'r of Soc. Sec., 191 F.3d 452 (table), 1999 WL 777355 (6th Cir. 1999) ("Admittedly, 'evidence relating to a time outside the insured period is only minimally probative' to the disability determination, but the Sixth Circuit has stated that it nonetheless 'may be considered to the extent it illuminates a claimant's health before the expiration of his insured status.'"); McCracken v. Comm'r of Soc. Sec., No. 1:08-CV-327, 2009 WL 2983049, at *3 (S.D. Ohio Sept. 14, 2009) (internal citation omitted) ("[M]edical evidence obtained after Plaintiff's

13

insurance status expired is not relevant, except perhaps to the extent that it relates back to the covered period."). In her brief, Folnsbee even states that the "evidence documents the existence of *new* severe impairment(s)." (Doc. No. 19-1, p. 15 (emphasis added).) Evidence of new impairments two years after the date last insured is not material to the determination of whether Folnsbee's condition was disabling during the relevant time period, i.e., from her alleged onset date of December 30, 2009 through her date last insured of December 31, 2010. The Court therefore denies her request for remand.

IV. Conclusion

For the reasons stated herein, Plaintiff's Motion will be hereby **DENIED** and an appropriate Order will be filed herewith.

IT IS SO ORDERED.

_____
THOMAS A. WISEMAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE